United States Courts
Southern District of Texas
FILED
*November 03, 2022*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.  § | **CRIMINAL NO. 4:22-CR-530** |
| § | |
| **BARRY BARNES,** § | |
| **Defendant.** § | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the United States Attorney's Office for the Southern District of Texas and the Public Integrity Section, Criminal Division, United States Department of Justice, Barry Barnes ("Defendant"), and Michael Wynne, Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Criminal Information. Count One charges the Defendant with Federal Program Bribery in violation of Title 18, United States Code, Section 666(a)(1)(B). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Criminal Information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 666(a)(1)(B), is imprisonment of not more than 10 years, a fine of not more than $250,000,

1

or both. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than three years. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will owe to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00). The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance. If the Defendant is indigent and unable to pay, the assessment may be waived by the Court or collected by the Bureau of Prisons.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as

2

denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas and the Chief of the Public Integrity Section, Criminal Division, United States Department of Justice. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to crimes charged in the Criminal Information. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

   (a)   Defendant agrees that this plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Public Integrity Section, Criminal Division, United States Department of Justice, and Defendant; it does not

3

bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony, and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waivers & Sentencing

7. The Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive other than concessions stated in this Agreement. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing

4

Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Criminal Information and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for other offenses arising from conduct charged in the Criminal Information and described in the factual basis of this plea agreement; and

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding – Southern District of Texas and
### Public Integrity Section, Criminal Division, United States Department of Justice Only

11. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Public Integrity Section, Criminal Division, United States Department of Justice, and Defendant. It does not bind any other United States Attorney's Office or unit of the United States Department of Justice. The United States Attorney's Office for the Southern District of Texas and Public Integrity Section, Criminal Division, United States Department of Justice will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in the Criminal Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, establish Defendant's guilt:

> From at least November 2019 through at least January 2021, Barry Barnes ("Defendant"), an agent of a local government and agency thereof, that is, the City of Houston Health Department ("Houston Health Department"), corruptly solicited and accepted for the benefit of any person a thing of value, that is United States

7

currency, from Individual A, Individual B, Individual C, intending to be influenced and rewarded in connection with business, transactions, and series of transactions of the Houston Health Department involving things of value of $5,000 or more, and which agency, in the same one-year period, received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance in each of the calendar years 2019, 2020, and 2021.

Specifically, the Houston Health Department is an agency of the City of Houston whose mission is to work in partnership with the community to promote and protect the health and social well-being of Houstonians and the environment in which they live. Since in or around 2006, Defendant has been an employee and agent of the Houston Health Department, serving as an administrative and community outreach coordinator. Defendant's duties included purchasing media, marketing, and advertising services from vendors in support of Houston Health Department programs.

Between November 2019 and April 2020, Individual A, the owner/manager of Vendor A, submitted to Defendant three invoices totaling $66,676 for services provided to the Houston Health Department. After receiving each invoice, Defendant prepared and submitted an interoffice memorandum, a direct pay form, and the invoice, requesting payment of the invoice to the Houston Health Department's Budget Office. Each of the invoices were paid by the City of Houston in separate disbursements. After receiving each of the three disbursements from the City of Houston, Individual A made kickback payments in United States currency to Defendant in the following amounts: (1) $1000 after the first disbursement, (2) an unknown amount after the second disbursement, and (3) $800 after the third disbursement.

On June 2, 2020, Defendant submitted to the Director of the Houston Health Department an emergency justification form in the amount of $474,276 requesting emergency approval to procure marketing and advertising services from Vendor A relating to the COVID-19 global pandemic. The emergency procurement request was approved. Pursuant to the approval, between in or around July 2020 and November 2020, Individual A submitted to Defendant seven invoices requesting payments totaling $474,276 for services provided by Vendor A to the Houston Health Department. Defendant submitted the invoices for payment, and, as a result, Individual A received four disbursements from the City of Houston totaling $474,276. Thereafter, Individual A made four corresponding kickback payments in United States currency to Defendant in the following amounts: $900 after the first disbursement, $3,000 after the second disbursement, $1,000 after the third disbursement, and $5,500 after the fourth disbursement. During this time, Defendant and Individual A exchanged numerous text messages wherein, among

8

other things, they discussed the manner of Defendant's preparation and submission of Houston Health Department procurement forms, and the amount of and manner in which the kickback payments would be made.

On November 4, 2020, Defendant submitted to the Director of the Houston Health Department a second emergency justification form requesting emergency approval to procure marketing and advertising services from Vendor A relating to the COVID-19 global pandemic in the amount of $320,000. The emergency procurement request was approved. Pursuant to the approval, in or around December 2020, Individual A submitted to Defendant two invoices requesting payments totaling $320,000 for services provided by Vendor A to the Houston Health Department. Defendant submitted the invoices for payment, and, as a result, Individual A received two disbursements from the City of Houston totaling $320,000.

In or around January 21, 2021, Defendant submitted to the Director of the Houston Health Department a third emergency justification form requesting emergency approval to procure marketing and advertising services from Vendor A relating to the COVID-19 global pandemic in the amount of $50,000. The emergency procurement request was approved. Pursuant to the approval, in or around January 2021, Individual A submitted to Defendant an invoice requesting payment in the amount of $50,000 for services provided by Vendor A to the Houston Health Department. Defendant submitted the invoice for payment. In or around February 2021, Individual A paid a $2,000 inducement to Defendant. In or around March 2021, Individual A received a disbursement from the City of Houston in the amount of $50,000. In or about April 2021, Individual A made a $3,000 kickback payment to Defendant.

Prior to submitting each of the emergency purchase forms, invoices, and other requests for payment for Vendor A, the Defendant and Individual A had a mutual understanding that Defendant would, in exchange, receive a kickback payment from Individual A after Individual A received the disbursements from the City of Houston. For example, in or before November 2019, and on several occasions thereafter, Defendant discussed with Individual A his financial difficulties and ongoing need for assistance from Individual A. Individual A agreed to provide Defendant with the financial assistance Defendant had requested; however, Individual A stated that Defendant would have to wait until after Individual A received the disbursement from the City of Houston that the Defendant would request. Thereafter, Defendant received and submitted the above-described invoices and other forms requesting that Individual A receive payment for services of Vendor A that Defendant had requested, understanding that Individual A would subsequently kick money back to Defendant [with the] [handwritten initials].

9

On December 3, 2020, Defendant sent Individual B, the owner of Vendor B, a text message requesting that Individual B submit to Defendant an invoice requesting payment in the amount of $25,000 for advertising services to be provided by Vendor B to the Houston Health Department. Individual B submitted the requested invoice in the amount of $25,000. On December 7, 2020, Defendant prepared and submitted an interoffice memorandum, a direct pay form, and the invoice, which Defendant had revised to reflect that the cost of services to be provided by Vendor B to the Houston Health Department was $30,000, to the Houston Health Department's Budget Office. On December 11, 2020, Individual B received a disbursement from the City of Houston in the amount of $30,000. Thereafter, and consistent with their mutual understanding prior to Defendant submitting the procurement request, Individual B made a $5,000 kickback payment in United States currency to Defendant, which Individual B withdrew from Vendor B's checking account and which Defendant had deposited into his checking account.

On January 13, 2022, Individual C, the owner of Vendor C, submitted to Defendant an invoice in the amount of $35,000 for services provided by Vendor C to the Houston Health Department. Defendant prepared and submitted an interoffice memorandum, a direct pay form, and the invoice, requesting payment of the invoice to the Houston Health Department's Budget Office. On January 21, 2022, Individual C received a disbursement in the amount of $35,000 from the City of Houston. Thereafter, and consistent with their mutual understanding prior to Defendant submitting the procurement request, Individual C made a $5,000 kickback payment in United States currency to Defendant by means of a peer-to-peer money transfer using Zelle, a company that performs such money transfers, on January 31, 2022.

Defendant admits that the value of the bribes/kickbacks that he solicited and accepted from Individuals A, B, and C, during the course of the above-described bribery/kickback was not less than $24,200, which he received in exchange for the Houston Health Department contracts for services for which Defendant had requested approval and payment

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly

10

withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, may be used against defendant in any prosecution if the Defendant commits a breach of this Plea Agreement.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and any other information, that the Government requests. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to

facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States, by executing any releases, waivers, or other documents provided by the Government

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21. Defendant agrees to entry of an Order requiring payment of full restitution to the victim(s) if any, regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22. Defendant stipulates and agrees that the property listed in the Information's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists.

23. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

26. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

27. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on Nov. 3, 2022.

_____
Barry Barnes
Defendant

Subscribed and sworn to before me on Nov. 3, 2022.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Jennifer B. Lowery
United States Attorney

By: _____
Sebastian A. Edwards
Assistant United States Attorney
Southern District of Texas

Corey R. Amundson
Chief, Public Integrity Section
U.S. Department of Justice

By: _____
Demetrius D. Sumner
Trial Attorney, Public Integrity Section
U.S. Department of Justice

_____
Michael Wynne
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:22-CR-530 |
| BARRY BARNES,<br>    Defendant. | § § § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending criminal information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____      11-3-2022
Michael Wynne                  Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the criminal information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea

15

agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          _Nov 3, 2022_____
Barry Barnes                                                         Date
Defendant

16